UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 7 |
|  | ) Case No. 10-41750-MSH |
| CESAR D. MAIORINO | ) |
|  | ) |
| Debtor. | ) |

**MEMORANDUM OF DECISION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE**

This matter came before me for hearing on the United States Trustee's ("UST") Motion to Dismiss Case Pursuant to 11 U.S.C. §707(b)(2) or in the Alternative Pursuant to 11 U.S.C. §707(b)(3). The UST seeks dismissal of this above-median income Debtor's case under §707(b)(2) because, in the UST's version of the Debtor's Statement of Monthly Income and Means Test Calculation (the "Means Test"), in addition to making some minor adjustments to the Debtor's Means Test, the UST deducted $2,259 a month in monthly payments that the Debtor makes for the college tuition and related expenses, including student loan payments, for two children and added $600 contributed to the household income by the Debtor's fiancé. The UST's calculations under the Means Test indicate the Debtor has monthly disposable income of $523.36 and therefore a presumption of abuse arises. Alternatively the UST seeks dismissal pursuant to §707(b)(3) on the grounds that, even if the $2,259 monthly college-related payments were not excluded from the Debtor's expenses, the Debtor's Schedules I and J would still reflect excess monthly income of $206.91,[1] and this excess is sufficient to justify a finding of abuse.

---

[1] The Debtor included his fiancé's $600 monthly contribution on Schedule I.

1

Section 707(b)(1) permits dismissal of a Chapter 7 case filed by an individual debtor with primarily consumer debts if granting the debtor relief would be an abuse of the provisions of Chapter 7, either under §707(b)(2)(A) because a presumption of abuse arises under the Means Test, a situation which can only exist if the debtor is an above-median income debtor, or under §707(b)(3) if the petition was filed in bad faith or if "the totality of the circumstances ... of the debtor's financial situation demonstrates abuse."

In opposition to the UST's motion, the Debtor submitted the May 25, 2006 judgment of the Massachusetts Probate Court incorporating an agreement between the Debtor and his former spouse which requires the Debtor to be solely responsible for the reasonable college expenses and college-related expenses of his two children. These expenses include tuition, room and board, and other ancillary expenses. The Debtor also filed an affidavit in which he states that, in addition to his older child's borrowing the maximum amount available under direct student loan programs, the Debtor obtained Parents Plus loans totaling over $100,000 to finance the college expenses of this child, who will graduate from college in September 2010. According to Schedule J the monthly payments on these loans account for $1,409.09 of the $2,259 in college-related expenses. The balance consists of room and board payments of $850 a month and money given to his child for expenses of $150 a month. According to the Debtor's opposition, the Debtor's younger child will begin college in September of this year.

Despite the UST's assertion of ambiguity in the Probate Court's judgment, I find the judgment crystal clear and quite broad. It places the financial burden for his children's education squarely and exclusively on the Debtor's shoulders. Furthermore, these expenses are clearly within the Bankruptcy Code's definition of "domestic support obligations" and therefore must be

2

paid by the Debtor. In re Van Nice, 2007 WL 2178069 (Bankr. D. Mont. July 26, 2007). I find that the Debtor's deduction for court-ordered expenses is appropriate. Once the court-ordered payments are added back into the Debtor's expenses, the UST concedes that there is no presumption of substantial abuse as the Debtor's monthly disposable income under the Means Test is negative by approximately $1,500, even with the addition of the $600 contribution from his fiancé. Therefore dismissal on the grounds that the Means Test indicates that granting relief in a Chapter 7 case is a presumed abuse pursuant to § 707(b)(2) is not warranted.

Section 707(b)(3) permits dismissal of a case under Chapter 7 if granting Chapter 7 relief would nevertheless be an abuse even where there is no presumed abuse or the presumed abuse is rebutted. In re Phillips, 382 B.R. 153, 167 (Bankr. D. Mass. 2008). Abuse under § 707(b)(3) arises either because the debtor filed the petition in bad faith or because the totality of the circumstances of the debtor's financial situation indicates abuse. It is the latter criterion which the UST advances in his motion.

The totality of the circumstances test as applied by courts prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was carried forward under BAPCPA. In re Boule, 2009 WL 722025 (Bankr. D. Mass. March 18, 2009); In re Lenton, 358 B.R. 651, 664 (Bankr. E.D.Pa. 2006)(citing a pre-BAPCPA Conference Committee Report for a prior draft of § 707(b)(3) that is identical to the version contained in BAPCPA).[1] The First Circuit Court of Appeals in In re Lamanna, 153 F.3d 1, 4 (1st Cir. 1998),

---

[1] The December 7, 2000 Conference Committee Report to the Senate, cited in Lenton, provides in relevant part:

> The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as

3

a case decided under the more rigorous pre-BAPCPA "substantial abuse" standard, adopted a series of non-exhaustive factors for determining substantial abuse set forth in In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989). Those factors include what is generally recognized as the primary, albeit not necessarily conclusive, factor, namely the debtor's "ability to repay his debts out of future earnings," as well as such other factors as "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code," and whether he was forced into Chapter 7 by unforeseen or catastrophic events. Lamanna, 153 F.3d at 4.

The Debtor's affidavit indicates that the Debtor withdrew funds from his 401(k) retirement plan in 2009 and that when he filed his 2009 federal income tax returns in 2010, he discovered he was liable for $23,000 in income taxes relating to the 401(k) withdrawal.[2] At the hearing on the UST's motion, the Debtor's counsel represented that the Debtor had reached an agreement with the IRS to repay this tax liability in installments of $384 a month. The Debtor, however, has not sought to amend Schedule J to reflect this additional expense.

In considering the totality of the circumstances in connection with a determination of

---

> an appropriate standard. It is intended that all forms of inappropriate and abusive debtor use of Chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. If a debtor's case would be dismissed today for "substantial abuse" as in *In re Lamanna*, 153 F.3d 1 (1st Cir. 1998), it is intended that the case should be subject to dismissal under H.R. 2415. Cases which have decided that a debtor's ability to pay should not be considered when determining abuse, or can be outweighed if the debtor is otherwise acting in good faith, are intended to be overruled. In dealing with ability to pay cases which are abusive, the presumption of abuse and the safe harbor protecting debtors from application of the presumption will not be relevant.

*Bankruptcy Reform Act of 2000-Conference Report,* 146 Cong. Rec. S 11683-02, S 11703 (2000)
[2] I take judicial notice that the Debtor's Schedule E indicates the Internal Revenue Service is owed $23,071 for a debt incurred on 12/1/2009.

4

abuse under § 707(b)(3), I may consider postpetition developments in addition to the situation as it existed on the Chapter 7 petition date. In re Hartwick, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). I will consider that the Debtor must make monthly payments of $389 on his nondischargeable tax obligation and, therefore, based upon his schedules will have negative monthly net income. Furthermore, while the Debtor's elder child will be graduating in September 2010, the Debtor will continue to be obligated to pay her student loans as well as the expenses for the college education of his younger child who will be starting college shortly. Additionally, among the factors I may consider in determining whether the totality of the circumstances indicates that granting relief in a Chapter 7 would be an abuse are whether the Debtor is eligible to be a debtor under Chapter 13, In re Walker, 381 B.R. 620, 625 (Bankr. M.D. Pa. 2008), and his ability to pay as measured by what could be paid in a hypothetical Chapter 13 plan. In re Rudler, 576 F.3d 37, 51 (1st Cir. 2009). Although the Debtor qualifies as an individual entitled to file a Chapter 13 petition, I am mindful of the Supreme Court's admonition that, for confirmation of a Chapter 13 plan, the Debtor's projected disposable income includes events which occur or are virtually certain to occur after the petition date. Hamilton v. Lanning, __U.S__, 130 S.Ct. 2464, 2478 (2010). Thus, the monthly payment to the IRS would leave the Debtor with no projected disposable income with which to make hypothetical Chapter 13 plan payments. Thus in weighing the totality of the circumstances, I find that there is no abuse in granting relief to the Debtor in this Chapter 7 case.

For the foregoing reasons, the UST's Motion to Dismiss is DENIED.

A separate order will issue.

Dated: September 1, 2010

_____

Melvin S. Hoffman
United States Bankruptcy Judge